# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Case No.

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DANISH RASHID,

    Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the "Government"), by and through Bryan Fields, Assistant United States Attorney for the District of Colorado, and the Defendant, DANISH RASHID, personally and by and through his counsel, Jennifer Beck hereby submit the following Plea Agreement pursuant to D.C.COLO.LCRR 11.1 and FED. R. CRIM. P. 11(c)(1)(A) and (B):

### I. AGREEMENT

    A.    <u>Defendant's Obligations:</u>

    1.    The Defendant agrees to (1) waive indictment, (2) plead guilty to an Information charging aiding and abetting wire fraud in violation of 18 U.S.C. §§ 1343 and 2, (3) waive his appeal rights, as detailed below, and (4) pay restitution in an amount determined by the Court.

1

Court Exhibit
1

B.     Government's Obligations

2.     In exchange for the Defendant's plea of guilty and his waiver of appeal rights, the government agrees to (1) file no other federal criminal charges against the Defendant based on matters currently known to the government or offenses based upon information provided by the defendant, (2) recommend a term of imprisonment at the bottom of the applicable guideline range, and (3) recommend a two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, provided that the Defendant does not do anything that is inconsistent with accepting responsibility between and including the date of his guilty plea and the date of sentencing.

C. Defendant's Waiver of Appeal

3.     The Defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.   Understanding this and in exchange for the concessions made by the Government in this agreement, the Defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following three criteria: (1) the sentence imposed is above the maximum penalty provided in the statute of conviction, (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 11; or (3) the government appeals the sentence.   Except as provided above, the Defendant also knowingly and voluntarily waives the right to appeal the manner in which the sentence is determined on grounds set forth in 18 U.S.C. § 3742.

4.     The Defendant also knowingly and voluntarily waives his right to challenge this prosecution, conviction, or sentence and/or the manner in which it was determined

2

in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255. This waiver provision, however, will not prevent the Defendant from seeking relief otherwise available if: (1) there is an explicitly retroactive change in the applicable guidelines or sentencing statute, (2) there is a claim that the Defendant was denied the effective assistance of counsel, or (3) there is a claim of prosecutorial misconduct. Additionally, if the Government appeals the sentence imposed by the Court, the Defendant is released from this waiver provision.

## II. ELEMENTS OF THE OFFENSE

5. The parties agree that the elements the offense of aiding and abetting wire fraud, a violation of 18 U.S.C. §2, are as follows:

   a. Someone else committed the charged crime; and

   b. The defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help him.[1]

6. The crime the defendant aided and abetted, wire fraud in violation of 18 U.S.C. § 1343, has the following elements:

   a. ~~The defendant~~ [handwritten: Someone else JP DR BJ] devised a scheme to defraud or to obtain money by means of false or fraudulent pretenses, representations or promises;

   b. ~~The defendant~~ [handwritten: Someone else JP D.RBJ] acted with specific intent to defraud or to obtain money by means of false or fraudulent pretenses, representations or promises;

---

[1] Tenth Circuit Pattern Jury Instructions (Criminal Cases), § 2.06 (2011 ed.) (Updated Feb. 2018)

3


Someone else JB   D. RBF

c.  ~~The defen~~dant used, or caused another person to use, interstate wire communications facilities for purposes of carrying out the scheme; and

d.  The scheme employed false or fraudulent pretenses, representations or promises that were material.[2]

### III. STATUTORY PENALTIES

7.  The maximum statutory penalty for a violation of 18 U.S.C. §§ 2 and 1343 is: not more than 20 years of imprisonment; a fine of not more than the greater of $250,000 or twice the gain or loss from the offense, or both a fine and imprisonment; not more than three years of supervised release; a $100 special assessment fee; and mandatory restitution.

8.  If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

### IV. COLLATERAL CONSEQUENCES

9.  The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury. The Defendant is an alien. As such, the conviction may cause the Defendant to be deported or confined indefinitely if there is no country to which the Defendant may be deported, to be denied admission to the United States in the future, and to be denied citizenship.

---

[2] Tenth Circuit Pattern Jury Instructions (Criminal Cases), § 2.57 (2011 ed.) (Updated Feb. 2018)

## V. STIPULATION OF FACTS

10. The parties agree that there is a factual basis for the guilty plea that the Defendant will tender pursuant to this Plea Agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of this Plea Agreement.

11. This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree as follows:

A. Overview of the Scheme

12. During the relevant time period in this case, the defendant's co-coconspirators devised, implemented and executed a scheme to fraudulently induce individuals throughout the United States and in numerous foreign countries (the "Victims") to provide scheme participants with money and property through a variety of scams employing false and fraudulent promises, pretenses and representations.

13. One of the scams used by scheme participants deceived Victims into believing that they had a serious computer problem (the "tech support scam").

5

Sometimes these victims would encounter a "pop up" on their computer while browsing the internet.  These pop ups would falsely tell the Victims that there was a problem with their computer and provide a number for tech support.  Calls to that number would be answered by an India-based scheme participant.  At other times, agents working in India-based call centers would make unsolicited calls to Victims and falsely state that the Victims' computer had a virus or other technical problem.  These agents would offer to diagnose the problem and persuade the Victim to provide access to the Victim's computer through remote access software.  Once inside the Victim's computer, the agents would use simple commands to make it appear that there was a problem with the computer when, in fact, there was no serious problem.  The agents would then ask for money to perform tech support services.

14.   Another scam used by scheme participants, often used to defraud the same victims of the Tech Support Scam, involved falsely notifying Victims that they had erroneously received, or would receive, a "refund" for the previously rendered tech-support services (the "Refund Scam").  These Victims, contacted via telephone by call center agents claiming to work for tech support companies, were told that if they agreed to return the money, they could keep a small portion of it for the inconvenience.  In many instances, the Victims would be persuaded to allow the agents to access their computer via remote access software.  Once inside the computer, the agents would collect information about the Victims' bank accounts, access Victim bank accounts online, and generate statements purporting to falsely support the claim that Victims had received a deposit when, in fact, they had not.

6

15. Victims of the scheme were directed to convey the money to scheme participants using a variety of means and methods: some victims were persuaded to purchase gift cards at retail stores and then provide the gift card number directly to the calling agents; some were told to use a money transfer service to send the money to "receivers" with established bank accounts in the United States and elsewhere; some were told to send cash to receivers via interstate commercial carriers; and some were instructed to initiate wire transfers from their bank to agents and receivers. In other instances, members of the scheme simply commandeered the Victims' computer, accessed their bank accounts using the internet, and used the illicit access to transfer money to receivers.

    B.    <u>The Defendant's Aiding and Abetting in the Execution of the Scheme to Defraud D.O.</u>

16. The Defendant, a citizen of India, applied for and received a J-1 visa to work as an intern at a hotel in Colorado Springs, Colorado. He arrived in the United States pursuant to that visa on April 25, 2018. With him on the same flight was another eventual participant in the scheme, Safder Iqbal[3], who had also applied for and received a J-1 visa to work at the same hotel.

17. Between approximately June or July 2017 and November 2018, D.O. was the victim of the Tech Support and Refund Scams. D.O. primarily communicated with an individual identifying himself as "Mark Thomas," who first called D.O. in June or July 2017. "Mark Thomas" is an Indian national known to the Defendant. This individual

---

[3] Safder Iqbal is charged in *United States v. Iqbal*, 19-cr-135-WJM.

7

was the Principal aided and abetted by the Defendant and is referred to in this stipulation of facts as "Principal."  Principal, who perpetrated the scheme from a location in Kolkata, India, claimed to represent a company known as Winsurf Technology.  Prior to receiving the call, D.O. had paid Winsurf Technology approximately $400 to remotely clean-up and take care of viruses present on D.O.'s personal computer.  Principal told D.O. that Winsurf Technology was terminating as a company.  As a result, Principal told D.O. that Winsurf Technology had inadvertently sent a $1,000 payment to D.O.  These representations were false.

18.     Principal remotely accessed D.O.'s computer via a remote access program called TeamViewer.

19.     Principal then directed D.O. to purchase and provide D.O and others with branded gift cards, MoneyGram and Western Union money orders, and other transfers.  The defendant met Principal in India before coming to the United States.  After coming to the United States, the defendant communicated with Principal via Facebook and Skype.  In August 2018, Principal asked the Defendant assist him in his scheme by receiving money from a victim in the United States.  The defendant voluntarily agreed to receive the money, knowing that it represented the proceeds of a fraud scheme and with the intent to help Principal successfully receive the proceeds of that scheme.  The defendant also agreed to remit those proceeds back to Principal in India.

20.     As a part of the scheme, Principal directed D.O. to provide the Defendant and Safder Iqbal with Western Union money orders in the amount of $1,000 each.

D.O. sent the money orders to the Defendant and Iqbal in Colorado Springs, Colorado on August 4, 2018 via a Western Union wire transfer.

21.   On Saturday, August 4, 2018, the Defendant picked up the Western Union money order from D.O. at a Colorado Spring grocery store.   In response to questions from the clerk handling the Western Union transfer, the Defendant falsely stated that D.O. was his uncle and that D.O. was helping him pay rent.   Later that same evening, Iqbal picked up the money order from D.O. at that same grocery store.

22.   On Monday, August 6, 2018 the defendant deposited $1,500 into his account at Wells Fargo bank.   The next day, August 7, 2018, he sent $1,400 back to India.   One of the purposes of this transaction was to remit back to Principal in India the $1,000 in fraudulent proceeds the defendant had received from D.O.

23.   On October 25, 2018, an FBI Special Agent acting in an undercover capacity as a Western Union employee called the defendant.   During the call, the defendant falsely denied receiving the $1,000 Western Union payment from D.O and falsely stated that he was from Dubai and not from India.

24.   In total, D.O. estimated D.O. has lost approximately $50,000 as result of the scheme.   In addition, D.O. has also incurred approximately $10,000 in bank overdraft fees as a result of D.O.'s victimization.   According to D.O., the financial losses D.O. has sustained have ruined D.O.'s life.   The defendant agreed to join the scheme to defraud D.O. in August, 2018.   The defendant withdrew from the scheme when he was arrested on November 8, 2018.   The parties stipulate and agree that between when the Defendant agreed to assist with the scheme in August 2018 and his

9

withdrawal from that scheme in November 2018, D.O. lost $13,860 as a result of the scheme and that these losses were reasonably foreseeable to the defendant.

## VI. ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

25. The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

   A. The base guideline USSG § 2B1.1, with a base offense level of 7.

   B. Pursuant to U.S.S.G § 2B1.1(b)(1)(D), a 2-level enhancement applies because the reasonably foreseeable losses were more than $6,500 but less than $15,000.

   C. Pursuant to U.S.S.G. § 2B1.1(b)(2)(A), a 2-level enhancement applies because the offense resulted in substantial financial hardship to a victim;

   D. Pursuant to U.S.S.G. § 2B1.1(b)(10)(B), a 2-level enhancement applies because a substantial part of the fraudulent scheme was committed from outside the United States;

   E. The Adjusted Offense Level is therefore **13**.

   F. <u>Acceptance of Responsibility</u>: Provided the Defendant does nothing

10

inconsistent with acceptance of responsibility between the date of the change of plea hearing and the date of the sentencing hearing, the Defendant should receive a 2-level downward adjustment, pursuant to U.S.S.G §§ 3E.1.1(a). The resulting Offense Level would be **11.**

G. <u>Criminal History Category</u>: The parties understand that the Defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the Defendant's prior convictions. Based on information currently available to the parties, it is estimated that the Defendant's criminal history category would be **Category I,** as the Defendant has no criminal history.

H. Assuming the (tentative) criminal history set forth above, the career offender/criminal livelihood/armed career criminal adjustments pursuant to USSG § 4B1.1 - § 4B1.4 would not apply.

I. <u>Imprisonment</u>: The advisory guideline range resulting from these calculations — an offense level of 11 at Criminal History Category 1 — is 8-14 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level of 11 set forth above could conceivably result in a range from 8 months (bottom of Category I), to 33 months (top of Category VI).

J. <u>Fine</u>: Pursuant to USSG § 5E1.2, assuming the estimated offense level of 11 set forth above, the fine range for this offense would be $4,000 to $40,000, plus applicable interest and penalties.

K. <u>Supervised Release</u>: Pursuant to USSG § 5D1.2, if the Court imposes a

11

term of supervised release, that term is at least 1 year but not more than 3 years.

  L. <u>Restitution</u>: The parties agree that, pursuant to USSG § 5E1.1, the Defendant is jointly and severally liable with other scheme participants for restitution in an amount to be determined by the Court.

  26. The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

  27. No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

  28. The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position

of any party on any 18 U.S.C. § 3553 factor.

## VI.  ENTIRE AGREEMENT

29.  This Plea Agreement states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this Plea Agreement, neither the Government nor the Defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 08/06/2019

DANISH RASHID
Defendant

Date: 8/6/19

Jennifer Beck
Attorney for Defendant

Date: 8/6/19

Bryan David Fields
Assistant United States Attorney

13