IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 19-cr-00280-WJM

UNITED STATES OF AMERICA,

       Plaintiff,

v.

DANISH RASHID,

       Defendant.

_____

**DEFENDANT'S MOTION FOR DOWNWARD VARIANCE**
_____

Defendant, Danish Rashid, by and through counsel, Jennifer Beck, hereby respectfully moves this Court to vary downward from the advisory guideline range of 8-14 months and to impose a sentence of probation.  Such a sentence is "sufficient, but not greater than necessary" to achieve the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2).

### INTRODUCTION

Mr. Rashid pled guilty to the sole count charged, Aiding and Abetting Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2, on August 6, 2019.[1]  The Probation Department calculated Mr. Rashid's advisory guideline range to be 8-14 months based on an adjusted offense level of 11 and a criminal history category of I.[2]  For the reasons stated

_____

[1] Doc. No. 11.
[2] Doc. No. 15, ¶103.

below, a probation sentence is "sufficient, but not greater than necessary" to achieve the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2).

**ARGUMENT**

### I.  Nature and circumstances of the offense – 18 U.S.C. § 3553(a)(1)

Mr. Rashid was charged with and pled guilty to Aiding and Abetting Wire Fraud for conduct that took place from August 2018 to November 2018 as it relates to victim D.O.  The presentence report thoroughly details the broader international fraudulent "tech support" scheme at issue.[3]  As it pertains to this case, Mr. Rashid's role was limited in scope and duration.

In August 2018, someone named "Mark Thomas", hereinafter referred to as the Principal whom Mr. Rashid aided and abetted, asked Mr. Rashid to assist him in the tech support scam by receiving money from D.O.  Mr. Rashid agreed to receive the money from D.O., knowing that it represented the proceeds of the fraudulent scheme, and agreed to send that money back to the Principal in India.

On August 4, 2018, Mr. Rashid accepted a wire transfer from D.O. in the amount of $1,000.  Mr. Rashid lied to a Western Union employee about his relationship to D.O. in order to dispel any concern of suspected fraud.  On August 6, 2018, Mr. Rashid transmitted that money to India, in order to remit back to the Principal the fraudulent proceeds D.O. wired Mr. Rashid.  When interviewed by an undercover FBI Agent, Mr. Rashid lied about the wire transfer and his country of origin.

Mr. Rashid was arrested on November 8, 2018.  He withdrew from the fraudulent scheme upon arrest.  He is stipulating that all of D.O.'s losses between the time he

---

[3] Doc. No. 15, ¶¶ 9-44.

joined the fraudulent scheme in August 2018 until his arrest in November 2018 were reasonably foreseeable to him.  D.O. estimates those losses from August 2018 to November 2018 total $13,860.[4]

## II.  Mr. Rashid's history and characteristics – 18 U.S.C. § 3553(a)(1)[5]

### Mr. Rashid's Background

Mr. Rashid was born and grew up in Kolkata, India.  He had a good childhood, with loving parents and close relationships with his siblings and extended family.  Mr. Rashid graduated from high school, went to college where he completed a three-year culinary program, and received his degree in 2017.  From his teen years through college, Mr. Rashid worked in the IT sector, at a website company and later at Dallas Energy.  After he received his culinary degree, Mr. Rashid left IT and started working as a cook at a hotel.  In 2018, Mr. Rashid applied for and was accepted into an apprenticeship program at the Broadmoor Hotel in Colorado Springs.  His internship lasted from April 2018 through March 2019.  During that time, he worked in all aspects of the kitchen at the hotel, including as a fine dining chef at the Penrose Room.  He shared a small apartment with other interns, including Safder Iqbal.  He worked long hours and learned a lot through the program.  He had hopes of opening his own restaurant one day.  After his internship ended, he got a job working at the Fragrance Hut in the Flatiron Mall in Broomfield.  When Mr. Rashid isn't working, he is exploring Colorado or reading books.  Mr. Rashid has never been in trouble with the law before.

---

[4] If Mr. Rashid were only liable for the $1,000 wire transfer he accepted and later transmitted to the Principal, he would be facing a guideline range of 4-10 months rather than the 8-14 month range.

[5] The information contained herein was provided through a social history interview of Mr. Rashid.

**Mr. Rashid's Immigration Status**

Mr. Rashid came to the United States on a J-1 work visa, which allowed him to spend a year legally working in the United States.  His visa was set to expire on March 25, 2019.  However, he was arrested on November 8, 2018 and he has had to overstay his visa in order to resolve this case.  He now lives in the United States as an undocumented person.  For that reason alone, he faces removal to India.  However, as a result of his guilty plea, he now has an Aggravated Felony as defined by immigration law on his record and will be inadmissible to the United States should he seek to lawfully return to the United States.

**Mr. Rashid's Safety Will Be in Jeopardy in India**

When Mr. Rashid is inevitably removed from the United States to India, he will face extreme hardship.  As an Indian Muslim, he faces persecution by the majority Hindu population and government.[6]  India's Prime Minister, Narendra Modi, was elected in 2014.[7]  Since that time, the country has seen a rise in hate crimes against Muslims.[8]  Hindu lynch mobs have popped up, killing Muslims.[9]  The government "began rewriting history books, lopping out sections on Muslim rulers, changing official place names to Hindu from Muslim, and more aggressively contesting holy sites."[10]

---

[6] *See* Exhibit A: Ellis-Petersen, Hannah, *"*They will lock us up or just kill us': Muslims fearful in West Bengal", *The Guardian*, December 12, 2019, https://www.theguardian.com/world/2019/dec/12/they-will-lock-us-up-or-just-kill-us-muslims-fearful-in-west-bengal. (Last accessed February 6, 2020).

[7] *See* Exhibit B: Gettleman, Jeffrey, Kai Schultz, Suhasini Raj and Hari Kumar, "Under Modi, a Hindu Nationalist Surge Has Further Divided India", *The New York Times*, April 11, 2019, *https://www.nytimes.com/2019/04/11/world/asia/modi-india-elections.html*. (Last accessed February 6, 2020).

[8] *Id.*

[9] *Id.*

[10] *Id.*

A new law implementing a "Citizenship Test" further exacerbates the discrimination against Muslim Indians.[11]  In mid-September, the government announced its plan to implement a National Register of Citizens (NRC) across India, to be implemented first in West Bengal, Mr. Rashid's home state.[12]  Every person in the country will have to prove Indian ancestry or they will be sent to detention centers and face deportation.[13]  In December, a citizenship amendment bill passed, which granted citizenship to migrants from Pakistan, Bangladesh and Afghanistan – but not if they are Muslim.[14]

As the NRC is carried out, Muslims found without the correct documents will face the threat of being declared an illegal alien.[15]  Protests against the NRC and the new "Citizenship Test" have been raging since December.[16]  Prime Minister Modi "has responded by deploying troops, enacting a curfew and shutting down the internet. Violent police confrontations have followed; the police fatally shot several young men in Assam State, beat unarmed students with wooden poles in New Delhi, and used tear gas and batons to disperse protests elsewhere."[17]  Detention centers are being built across Mr. Rashid's home state of West Bengal.[18]  For all of these reasons, Mr. Rashid is fearful of what lies in store once he is deported back to India.

---

[11] *See* Exhibit B.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] Exhibit C: Victor, Daniel, "Why People Are Protesting In India", *The New York Times*, December 17, 2019, https://www.nytimes.com/2019/12/17/world/asia/india-protests-citizenship-muslims.html. (Last accessed February 6, 2020).
[17] *Id.*

### III. Complying with the purposes set forth in 18 U.S.C. 3553(a)(2).

The Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)," which are "the need for the sentence imposed

B)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

C)    to afford deterrence to criminal conduct;

D)    to protect the public from future crimes of the defendant; and

E)    to provide the defendant with needed educational, or vocational training, medical care, or other correctional treatment in the most effective manner."

18 U.S.C. §3553(a)(2).

A sentence of probation reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense given Mr. Rashid's unique situation.  Mr. Rashid, someone with no criminal history whatsoever, now has a federal felony conviction on his record.  That is a significant consequence of his pleading guilty. Moreover, he faces the collateral immigration consequence of removal to India and inadmissibility now that he has an Aggravated Felony on his record.  Mr. Rashid, who once wanted to start a new life in America, will now be barred from the country.  He will be deported to India, where growing political unrest threatens his safety.  Those collateral consequences more than reflect the seriousness of the offense, promote respect for the law, and provides just punishment.  Before Mr. Rashid is deported, a sentence to probation will allow Mr. Rashid to continue to work in order to make restitution payments.  If he is sentenced to prison, he will not be able to make such payments.

---

[18] *See* Exhibit B.

To address deterrence and protection of the public, this Court should consider that the collateral consequences of Mr. Rashid's conviction alone (an aggravated felony that results in removal and inadmissibility) afford adequate specific deterrence to him and adequate general deterrence to others like him in India who may be thinking of coming to the United States to continue this fraudulent tech support scheme.

In considering how best to impose a sentence that provides Mr. Rashid with needed correctional treatment, the Court should take into account that Mr. Rashid's substance abuse issues will best be addressed with programming in the Bureau of Prisons combined with comprehensive treatment while on supervised release.

In considering how best to impose a sentence that provides Mr. Rashid with needed correctional treatment, the Court should keep in mind that the Bureau of Prisons fails to provide basic resources and programs to undocumented prisoners.  The BOP bars prisoners subject to an order of deportation from participating in the RDAP program, compensated job-training programs, and reentry-focused programs.  Under the recently enacted First Step Act, prisoners subject to an order of deportation are excluded from earning additional time credit for participating in evidence-based programs.  Simply put, Mr. Rashid will not be able to receive correctional treatment in prison.  Essentially, if Mr. Rashid receives a period of imprisonment, he will be warehoused until he is deported.

Lastly, if the Court chooses to impose a sentence of incarceration, Mr. Rashid submits that a period of supervised release should not be imposed.  According to United States Sentencing Guideline Section 5D1.1(c), "the court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by

statute and the defendant is a deportable alien who likely will be deported after imprisonment." Because Mr. Rashid's conviction does not carry a mandatory period of supervised release and he is likely to be deported after his imprisonment, supervised release is not appropriate.

In sum, Mr. Rashid is remorseful and ready to make amends. He stands to lose everything he has worked for because of his first felony conviction. A sentence to probation affords D.O. the best chance of being made whole by allowing Mr. Rashid to work and make significant payments toward restitution.

## CONCLUSION

For the reasons stated above, after a consideration of the nature and circumstances of the offense, and Mr. Rashid's history and characteristics, a variant sentence of probation is "sufficient, but not greater than necessary" to achieve the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2).

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/ Jennifer Beck_____
JENNIFER BECK
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Jennifer_Beck@fd.org
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Bryan Fields, Assistant United States Attorney
Email:  bryan.fields3@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Danish Rashid (via U.S. Mail)

s/ Jennifer Beck
Jennifer Beck
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Jennifer_Beck@fd.org
Attorney for Defendant