IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  19-cr-280-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. **DANISH RASHID**,

      Defendant.

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR VARIANT NON-GUIDELINE SENTENCE

Probation for a defendant who has admitted to knowingly and intentionally joining a transnational fraud scheme that preyed on some our country's most vulnerable citizens would be an injustice.  For the reasons set forth in this memorandum, the United States of America, by Jason R. Dunn, United States Attorney for the District of Colorado, through Bryan David Fields Assistant United States Attorney, respectfully requests that the Court deny the Defendant's Motion for Variant Non-Guideline Sentence ("Def. Motion") [ECF No. 19] and impose a Guidelines sentence of 8 months imprisonment (the "Recommended Sentence").

## I.    ALL OF THE FACTORS THAT THE COURT MUST CONSIDER WARRANT A GUIDELINE SENTENCE IN THIS CASE

In fashioning a sentence, the Court must address each of the factors set forth at 18 U.S.C. § 3553(a), including (1) the applicable United States Sentencing Guidelines (the "Guidelines"), (2) the need to avoid unwarranted sentencing disparities, (3) the nature, circumstances, and seriousness of the offense, (4) the need to promote respect for the law, afford adequate deterrence, and protect the public from further crimes, and (5) the history and characteristics of

1

the Defendant. Each of these factors supports a sentence at the bottom end of the Guidelines range.

### A. The Guidelines Range Provides a Rough Approximation of Sentences Sufficient to Achieve the Goals of Sentencing

The Defendant's request for a variant sentence is a request to create a sentencing disparity. Because the Defendant is not attacking the Guidelines themselves as being unmoored from the rough approximation of justice required by § 3553(a), the question presented by the Defendant's submission is whether a variant sentence, and the concomitant disparity it would create, is warranted. It is not. *See Rita v. United States*, 551 U.S. 338, 350 (2007) ("[I]t is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.").

Referring to the Guidelines also helps Courts achieve another of § 3553(a)'s objectives: avoiding unwarranted sentencing disparities. *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006) (describing Guidelines' role as an essential took for "creating a fair and uniform sentencing regime across the country"). In considering the sentence the Defendant should receive in this case, the Court should weigh these two 3553(a) factors— the Guidelines themselves, §3553(a)(4), and the need to avoid unwarranted sentencing disparities, § 3553(a)(6) — against any downward variance. When considered in conjunction with the reasons set forth below, the case against a downward variance for *any* reason becomes even more compelling.

### B. The Nature and Circumstances of the Offense Support a Guideline Sentence

The Defendant entered into a plea agreement with stipulated facts, which were then incorporated into the Presentence Investigation Report ("PSIR") without objection. Those facts describe a sophisticated scheme by foreign nationals to target vulnerable and elderly Americans. PSR ¶¶ 10-13. One of those Americans was the victim in this case: a courier with no assets who

borrowed money from his 90-year old mother to pay the schemers and whose financial losses have ruined his life. PSR ¶ 23. The defendant intentionally took $1,000 of that victim's money. PSIR ¶ 22. Along the way, he lied on multiple occasions to help avoid suspicion and aid his co-conspirator, Safder Iqbal. PSIR ¶¶ 20-22. This conduct fully supports the Recommended Sentence.

The defendant seeks to minimize the seriousness of the offense in footnote 4. But as the Court is well aware from the sentencing of co-conspirator Safder Iqbal, this was a large and complicated scheme with thousands of dollars in losses. The defendant substantially benefits from the plea bargain. He should not receive another benefit in the form of a variance.

## II.   The Defendant's History and Characteristics do Not Warrant a Variance

The defendant's history of work at a luxury hotel in Colorado Springs does not warrant a variance. To the contrary, his abuse of the J-1 visa program — an important conduit for cultural and economic exchange between the United States and other countries — is an aggravating factor in this particular case. *See, United States v. Petrus*, 588 F.3d 347 (6th Cir. 2009) (explaining that in the post-*Booker* era a court could vary based a defendant's likely deportation *or* conclude "that a person granted the benefit of entry should be subject to an upward variance for abusing the privilege").[1] The United States opened its doors to the defendant and offered to help him get an internship to better himself. He repaid that favor by walking through those doors and stealing from our country's most vulnerable. The thief who steals from a homeowner is bad; the thief who charms his way into the home and then takes advantage of the homeowner's generosity by stealing from an elderly relative in the back room is much worse.

---

[1] The government is not asking for an upward variance. This case is cited only to rebut the conclusion that a defendant's immigration status is a one-way-ratchet to lower sentences. It is not.

The assertion that the Defendant has "never been in trouble with the law before" (which has no basis in the evidence considering the difficulty of obtaining criminal history records from India) does not warrant a variance. If framed solely in terms of his history in the United States, the evidence shows that the Defendant was law abiding for only a few weeks. He was arrested after being here for only 8 months. His history cuts *against* a variance; not in favor of one. Finally, the fact that a fraud Defendant has no criminal history is typical: in fiscal year 2018, for example, 68.5% of fraud defendants had no criminal history. *Quick Facts*, Fiscal Year 2018, available at *https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Theft_Property_Destruction_Fraud_FY18.pdf* (accessed on February 7, 2020) ("Quick Facts").

The defendant's illegal immigration status is a product of his own making. It, too, should not be grounds for a variance. If this argument is accepted it would mean that immigrants in the country who commit crimes would categorically qualify for lower sentences than citizens who commit crimes. Section 3553(a) does not endorse this outcome. To the contrary, adopting such a position would create the unwarranted disparities that the guidelines and the statute are designed to avoid.

The statements regarding the defendant's safety in India are speculative. India is a vast and diverse place with rich political traditions that vary substantially from region to region. Citing a few newspaper articles about general unrest in India to support the notion that this defendant is specifically in danger creates a substantial risk of grafting our own prejudices and preconceived notions about "other" places that are not based in fact.[2] Consider the reverse:

---

[2] Separate and apart from the substance of the argument and the implications of drawing broad conclusions about another country are the procedural and evidentiary problems underlying it. A few English-language newspaper articles — including one from a foreign country that used

4

imagine a court in India sentencing an American minority.  Given the variegated landscape of American politics would be it be accurate to cite a few articles about hate crimes and gun violence and then conclude that the American is categorically unsafe upon his or her return?  The court should not endorse a caricature of Indian politics based on a few newspaper articles as grounds for a variance.

In the alternative, arguments about the unrest in India are not linked at all to this defendant's criminal conduct  The situation in India would be the same regardless of whether the defendant had committed a crime.  As soon as he finished his J-1 visa program, he would have returned home.  In other words, going back to India was *always* the outcome (unless the defendant falsely stated his intentions in his visa application).  The defendant's sentence should not vary depend on whether he goes home voluntarily or is deported by the authorities.  Using his ultimate departure from the United States back to what he admits is a home with a loving family as the basis for a sentencing reduction would be an unjustified windfall that finds no support in the law.

Finally, the arguments made by the defendant here applied with equal force to co-conspirator Iqbal who was, like Rashid, a Kolkata-based Muslim who participated in the scheme while on a J-1 visa and faces deportation upon his release.  Crediting these arguments for this defendant, but not for Iqbal, also creates unwarranted disparities in violation of 18 U.S.C. §3553(a).

### III.     All of the Other Sentencing Factors Support a Guideline Sentence

The defendant's specific argument that probation would promote respect for the law and

---

to be India's colonial power — are a flimsy basis on which to make broad conclusions about the status of the relationship between Hindus and Muslims in West Bengal.

5

provide just punishment would, in these particular circumstances, do just the opposite. on the one hand, he says that he will be deported, which means he will note even bear the burdens of such a punishment; on the other, he says that he needs probation because he will be deported! This is not respect for the law: it is an effort to avoid its consequences.

The argument that the defendant should receive probation in order to make restitution payments before deported likewise rings hollow. The defendant was arrested in November 2018 and has been out on bond since that time. Given the length of time and the relatively small sum involved as part of the plea agreement, there is no reason the defendant could not already have made substantial progress towards repaying his victim. There is no indication in the record that he has even tried to do so.

A variance would also undermine deterrence. These schemes flourish because the perpetrators — operating from shadowy overseas call centers — believe that they are impervious to law enforcement. This breeds contempt for our laws and encourages more transnational criminality. To the extent that higher sentences are necessary for effective deterrence when the odds of getting caught are low, a variance would also undermine §3553(a)'s requirement that sentences adequately deter. *See* Stephanos Bibas, *White-Collar Plea Bargaining and Sentencing After Booker*, 47 Wm. & Mary L. Rev. 721, 724 (2005).

Finally, arguments about foreign-national prisoners and their access to Bureau of Prison programs should be balanced by an acknowledgement that such prisoners are often eligible to serve their sentences in their native countries, which are much better equipped to help their citizens make successful transitions back to their respective communities. *See* 18 U.S.C. § 4100-4115. The Recommended Sentence would still allow the defendant to take advantage of any needed programs if he avails himself of such opportunities by applying to serve his sentence in

6

India.

## IV. CONCLUSION

    For the reasons set forth above, varying below the Guidelines range in this case would actively undermine, rather than promote the § 3553(a) factors. In this case, the Guidelines are doing their job: they provide a rough approximation of the sentence that is sufficient, but not greater than necessary, to achieve the goals of Federal sentencing. The Recommend Sentence is sufficient, but not greater than necessary to achieve the goals of our criminal justice system.

                                        JASON R. DUNN
                                        United States Attorney
                                        District of Colorado

                    By:    s/ *Bryan David Fields*
                            BRYAN DAVID FIELDS
                            Assistant United States Attorney
                            1801 California Street, Suite 1600
                            Denver, CO 80202
                            Telephone 303-454-0100
                            Facsimile 303-454-0402
                            Bryan.Fields3@usdoj.gov

**CERTIFICATE OF SERVICE**

        I certify that on this 10th day of February, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case

        s/ *Bryan David Fields*
        BRYAN DAVID FIELDS
        Assistant United States Attorney
        1801 California Street, Suite 1600
        Denver, CO 80202
        Telephone 303-454-0100
        Facsimile 303-454-0402
        Bryan.Fields3@usdoj.gov